# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**SHCOREY ROSS**                                                                              **PLAINTIFF**

**VERSUS**                                                     **CIVIL ACTION NO. 2:22-cv-00094-RPM**

**TODD KEMP, et al.**                                                              **DEFENDANTS**

## ORDER DENYING MOTION [8] FOR
## TEMPORARY RESTRAINING ORDER

This matter is before the Court on the Motion [8] for Temporary Restraining Order ("TRO") filed by *pro se* Plaintiff Shcorey Ross. Ross is a pretrial detainee housed at the Clarke County Jail in Quitman, Mississippi, since March 14, 2022. He filed this Complaint [1] under 42 U.S.C. § 1983 on July 15, 2022, and he filed this Motion [8] for TRO on August 8, 2022. The parties appeared before the Court at an Omnibus Hearing on February 23, 2023, at which time the Court discussed the Motion [8] for TRO with Ross and gave him an opportunity to clarify his allegations. Having thoroughly reviewed and liberally construed the pleadings, along with Ross's testimony at the Omnibus Hearing, the Court finds that the Motion [8] for TRO should be denied.

### I. BACKGROUND

In his Motion [8] for TRO, Ross avers that he "fear[s] for [his] life" at the Clarke County Jail, where staff has allegedly retaliated against him for filing this lawsuit. [8] at 1. Specifically, Ross claims that he was "placed in the hole with no mat or cover," and his thermals were taken away. *Id*. He also alleges that jail staff conducted a room search outside his presence but "found nothing there." *Id*. Finally, Ross says that jail staff revoked his visitation and commissary privileges for a week, turned the phone off in his cell, and confiscated the paper and envelopes he uses to write personal mail (though he was allowed to keep his legal correspondence). *Id*.

At the Omnibus Hearing, Ross provided more detail about the threats and mistreatment he

allegedly suffers at the hands of jail staff. *See id*. He recalled three specific events for the Court's consideration—only one of which occurred since the Motion [8] for TRO was filed.

*First*, on May 10, 2022, Ross claims that Defendant Jailer Barry White tased him in the lower back while he was locked behind a cell gate. Ross testified that he did not present a threat to White at the time of the tasing, nor did he pose a threat to himself—though he admits to resisting White's initial command and shouting profanity at the guards. After the tasing, Ross was taken to a holding cell, where he became "enraged" and ignored further commands to stop yelling. At that point, White maced Ross three or four times through the flap in the cell door. White also allegedly told Ross that he "deserved to be shot and killed." After being maced, Ross was placed in a restraint chair for an hour and missed a meal as a result.

Ross was never seen by medical personnel to have the taser prongs removed from his body; instead, officers "snatched" the prongs from his lower back. Nor was he given a proper chance to decontaminate from the mace. Ross testified that he was allowed to shower for three to five minutes, which worsened the burning sensation. Because he was not properly decontaminated, the mace aggravated his eczema, and it took a while for his skin to heal.

*Second*, Ross testified that he suffered a similar situation on May 26, 2022. Defendant Jailer James Mosely tased him in the chest—again while he was locked behind a cell gate. At the time, Ross had just returned to his permanent cell from a stay in the holding cell, where he was temporarily housed after reporting suicidal ideation. Upon his return, Ross was placed in a cell adjacent to a "mental patient," who constantly yelled threats and defecated on the cell floor. When he realized the situation, Ross begged Mosely to return him to the holding cell, but Mosely tased him instead. Again, Mosely "snatched" the taser prongs out of Ross's body, and Ross never

received medical attention for this incident either.

*Third*, sometime in January 2023, Jailer Kenneth Holifield (who is not a named Defendant) allegedly bribed other inmates to "jump" Ross. Though Ross did not overhear these bribes, the other inmates told Ross that Holifield offered them commissary items to attack him. Despite Holifield's alleged attempt, Ross was never "jumped" by other inmates.

Finally, as a general matter, Ross avers that the Clarke County Jail has no 24-hour medical personnel available for inmates. Instead, a doctor visits the jail every Thursday to tend the written medical requests that are lodged during the week. Ross admits that his ailments (heartburn, rashes, and ADHD) are treated during these Thursday visits, but he believes he should receive speedier attention.

Ross testified that he has not been tased or maced since he filed his Motion [8] for TRO in August 2022. He has had minimal altercations with jail staff since then, but he remains afraid that officers will harm him—based solely on his prior experiences. For relief, Ross asks to be moved to another facility.

## II. DISCUSSION

"To prevail on a request for a temporary restraining order . . . , a party must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) that the injunction will not have an adverse effect on the public interest." *Shorty v. Sparkman*, No. 5:12-cv-00114-DCB-RHW, 2012 WL 6949271, at *1 (S.D. Miss. Sept. 18, 2012), *report and recommendation adopted by* 2013 WL 319336, at *3 (S.D. Miss. Jan 28, 2013). "A preliminary injunction 'is an extraordinary and drastic

remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion' on each of the four elements of the analysis." *Adams v. Epps*, No. 5:08-cv-00154-DCB-MTP, 2009 WL 235624, at *1 (S.D. Miss. Jan. 30, 2009) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 & n.1 (5th Cir. 1989)). "When . . . the movant cannot carry that burden, extraordinary relief is properly denied." *Id*.

Ross has failed to demonstrate a substantial likelihood of success on the merits. He seeks an injunction requiring Defendants to transfer him to another facility, but "[a] prison inmate does not have a protectable liberty or property interest in his custodial classification and does not have a constitutional right to be housed in a particular facility," *Humphrey v. Banks*, 777 F. App'x 767, 768 (5th Cir. 2019) (quotation omitted). "The daily operations and management of jails are generally for duly elected and appointed officials who are answerable to the law if they deliberately or recklessly impinge on the constitutional rights of prisoners." *Nathan v. Wilkinson Cnty. Corr. Facility*, No. 5:13-cv-00096-HSO-RHW, 2013 WL 6859335, at *2 (S.D. Miss. Dec. 30, 2013) (quotation omitted). To the extent Ross seeks a transfer to a different correctional institution, his Motion [8] for TRO must be denied. *See Humphrey v. Hall*, No. 1:19-cv-00362-HSO-JCG, 2020 WL 4893007, at *6 (S.D. Miss. Aug. 20, 2020) (denying a similar request for injunctive relief for the same reason).

What's more, Ross has failed to make a clear showing that he will suffer irreparable injury if injunctive relief is denied. Taking Ross's testimony as true, he has suffered no injury at the hands of these Defendants since the Motion [8] for TRO was filed more than six months ago. That is, Ross does not claim that he is under an ongoing threat of physical violence from Defendants. *See Maxwell v. Almanza*, No. 1:18-cv-0179-BU, 2021 WL 5969409, at *3 (E.D. Tex. Nov. 10, 2021).

"Nor is the fact that prison officials may have used excessive force against [Ross] in the past dispositive of whether there is a sufficient probability that [he] will be subjected to it in the future." *See id*. Ross is merely afraid that officers will harm him at some point in the future, based solely on their past conduct and Ross's belief that they have acted in "anger" towards him. But "conclusory allegations are insufficient to carry his burden" of proving that he is entitled to injunctive relief. *See Shorty*, 2012 WL 6949271, at *2. Without evidence that Ross is likely to suffer irreparable harm, injunctive relief must be denied at this point. *See White*, 862 F.2d at 1211 ("Without question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue.").

In any event, "[t]he primary justification for [awarding preliminary injunctive relief] is to preserve the Court's ability to render a meaningful decision on the merits." *Rufus v. Varnado*, No. 5:08-cv-00263-DCB-MTP, 2009 WL 901557, at *1 (S.D. Miss. Mar. 30, 2009). Having heard Ross's testimony, the Court "concludes that it will be able to render a meaningful decision without granting" injunctive relief. *See id*.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that *pro se* Plaintiff Shcorey Ross's Motion [8] for Temporary Restraining Order is **DENIED**.

THIS, 3rd day of March, 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE