**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**SHCOREY ROSS**                                                                                    **PLAINTIFF**

**V.**                                                                          **CAUSE NO. 2:22-cv-00094-TBM-RPM**

**TODD KEMP, et al.**                                                                      **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW the Plaintiff Shcorey Ross, by and through counsel of record and pursuant to the Federal Rules of Civil Procedure and submits the following Memorandum of Authorities in Support of its Response to Defendants Todd Kemp, Barry White and James Mosely's Motion for Summary Judgment [Dkt. 43], respectfully to-wit:

1.        Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant can file a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Supreme Court has said that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

2.        A naked assertion of wrongdoing devoid of "further factual enhancement" falls short of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and Rule 7008(a). *Howard v. ABN AMRO Mortg. Grp., Inc.*, No. 1:13CV543-KS-MTP, 2014 U.S. Dist. LEXIS 40129, 2014 WL 1237317, at *3 (S.D. Miss. Mar. 26, 2014) (quoting *Twombly*, 550 U.S. at 557)). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true." *Twombly*, 550 U.S. at 555; *see Dixon v. Bay Fin., Inc.* (*In re Dixon*), No. 09-05009-NPO, 2010 Bankr. LEXIS 382, 2010 WL 501547, at *1 (Bankr. S.D. Miss. Feb. 5, 2010). On the other hand, "when 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *In re Dixon*, 2010 Bankr. LEXIS 382, 2010 WL 501547, at *1 (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). The Fifth Circuit Court of Appeals has held that "[w]here the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008).

3.      In deciding a Rule 12(b)(6) motion, a court generally may not "go outside the complaint." *Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009) (citing *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). An exception to the general rule allows a court to consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to a claim. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).

4.      "If a complaint is ambiguous or does not contain sufficient information to allow responsive pleading to be claimed, the proper remedy is a motion for a more definite statement, and not an automatic dismissal." *Please See Sisk v. Texas Parks and Wildlife Dept.*, 644 F.2d 1056 (5th Cir. 1981); Fed.R.Civ.P. 8(a); and Fed.R.Civ.P. 12(b)(6).  "Pleading shall set forth a short, plain statement of the

claim showing that the pleader is entitled to relief, and that each averment in pleading shall be simple, concise, and direct, complaint is not subject to dismissal unless it appears to a certainty that plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of allegations, and even then, a court ordinarily should not dismiss complaint except after affording every opportunity to plaintiff to state a claim upon which relief might be granted." *Please See John Walker & Sons v. Tampa Cigar Co.*, 197 F.2d 72 (5th Cir 1952); Fed.R.Civ.P. 8 and Fed.R.Civ.P. 12; *Please See Also Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir. 1977) (holding a court should not ordinarily dismiss a complaint except after affording every opportunity to plaintiff to state a claim upon which relief might be granted).

5.      If, however, a court considers documents outside the complaint that do not meet this exception, it must treat the motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(d) (as adopted by Rule 7012(b)). Regardless, it is not the responsibility of the Court to wade through exhibits and sift out a material factual dispute. See *Phillips Med. Capital, LLC v. P&L Contracting, Inc.*, No. 2:10CV92-DAS, 2011 WL 13217913, at *2 (N.D. Miss. Nov. 21, 2011).

6.      Federal Rule of Civil Procedure 56(d), When Facts Are Unavailable to the Nonmovant, states "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

7.      Federal Rule of Civil Procedure 56(e), Failing to Properly Support or Address a Fact, states "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."

8.      Summary judgment under Rule 56 in case at law where jury has been demanded ought not to be given unless it is quite clear what truth was. *Port of Palm Beach Dist. v. Goethals*, 104 F.2d 706 (5th Cir. 1939).

9.      Summary judgment as envisioned by Rule 56 is method of testing in advance of trial, not as formerly on bare contentions found in pleadings, but on intrinsic merits, whether there is in actuality real basis for relief or defense. *E. C. Ernst, Inc. v. General Motors Corp.*, 482 F.2d 1047 (5th Cir. 1973), app. after remand, 537 F.2d 105 (5th Cir. 1976).

10.     No matter how enticing, summary judgment cannot short-circuit trial by judge or jury of fact questions if they are really in case. *Bros., Inc. v. W. E. Grace Mfg. Co.*, 261 F.2d 428, 1 Fed. R. Serv. 2d (Callaghan) 862, 119 U.S.P.Q. (BNA) 401 (5th Cir. 1958), app. after remand, 320 F.2d 594, 7 Fed. R. Serv. 2d (Callaghan) 1143, 138 U.S.P.Q. (BNA) 357 (5th Cir. 1963).

11.     In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court stated:  ". . . [I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Lower courts may not devise additional requirements based on their notions of policy.  The usual practices of litigation, under the Federal Rules of Civil Procedure and otherwise, govern except insofar as the statute dictates otherwise.  Therefore, the PLRA does not require litigation defendants to have been named in grievances, does not require exhaustion to be pled and documented in the complaint, and does not prescribe a "total exhaustion" rule requiring dismissal of the entire case if any claims are unexhausted.

12.     In *Ross v. Blake*, 136 S.Ct. 1850 (2016), the Supreme Court held remedies may be unavailable where they are "officially on the books, [but] not capable of use to obtain relief"—for example, instances where the remedy "operates as a simple dead end" and presents no actual potential for relief; where officials thwart exhaustion through "machination, misrepresentation, or intimidation"; or where a remedial scheme is so "opaque" that "no ordinary prisoner can discern or navigate it."

13.     A case brought by a prisoner, but dismissed without prejudice for non-exhaustion or other PLRA-related deficiency, may be refiled after release unencumbered by PLRA restrictions. *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (three strikes provision); *Dixon v. Page*, 291 F.3d 485, 488 n.1 (7th Cir. 2002); *Harris v. Garner*, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc) (physical injury requirement). Prisoners may also voluntarily dismiss and refile after release to remedy PLRA issued. *Ojo v. United States*, 2018 WL 3863441, *8 (E.D.N.Y., Aug. 14, 2018); *Riggs v. Sonney*, 2017 WL 2936697, *3 (N.D. Ill., July 10, 2017); *Paulino v. Taylor*, 2017 WL 1080081, *3 (S.D.N.Y., Mar. 15, 2017). Both the foregoing propositions assume the case can be refiled within the statute of limitations, with such tolling as may be allowed for the exhaustion process.

14.     The Fifth Circuit has held or assumed that hearings will be held to resolve factual disputes over exhaustion. *Dillon v. Rogers*, 596 F.3d 260, 273 (5th Cir. 2010). Pre-trial hearings to decide exhaustion-related factual disputes are now common.

15.     The burden of proof of the non-exhaustion defense is on the defendants. *Jones v. Bock*, 549 U.S. 199, 204, 212 (2007); *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). To satisfy their burden, defendants must show that there was an available remedy at the relevant time and place, and what it was. *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Brown v. Valoff*, 422 F.3d 926, 940 (9th Cir. 2005). Defendants must also show the remedy was made known to prisoners in an intelligible fashion. *Ramirez v. Young*, 906 F.3d 530, 534 (7th Cir. 2018); *Albino v. Baca*, 747 F.3d 1162, 1175-76 (9th Cir. 2014) (en banc); *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013).

16.     Prisoners must exhaust available remedies, but not unavailable ones. *Ross v. Blake,* 136 S.Ct. 1850, 1859-60 (2016) (stating if a remedy is not available, "the inmate has no obligation to exhaust the remedy"; "exhaustion is not required"; "§ 1997e(a) poses no bar."). To be available, a remedy must address the particular problem raised by the grievant. *Kaemmerling v. Lappin*, 553 F.3d 669, 676 (D.C.Cir. 2008); *Snider v. Melindez*, 199 F.3d 108, 133 n.2 (2d Cir. 1999). A remedy may be

unavailable for a particular complaint by explicit policy provision. *Owens v. Keeling*, 461 F.3d 763, 769-70 (6th Cir. 2006) (noting exclusion of classification disputes from grievance system); *Taylor v. Swift*, 21 F.Supp.3d 237, 241-42 (E.D.N.Y., May 21, 2014) (holding exclusion of "inmate allegations of assault or harassment" means prisoners may rely on that language and refrain from exhausting such allegations, notwithstanding defendants' construction of the phrase to mean something else), *appeal dismissed*, No. 14-3382 (2d Cir., Mar 10, 2015) (unpublished). A remedy may be unavailable for a particular complaint by informal practice. *Marr v. Fields*, 2008 WL 828788, *6 (W.D.Mich., Mar. 27, 2008) (holding evidence that hearing officers interpreted grievance policy exclusion broadly to exclude all grievances with any relationship to a disciplinary charge could excuse failure to exhaust); *Casanova v. Dubois*, 2002 WL 1613715, *3, 6 (D.Mass., July 22, 2002) (finding that, contrary to written policy, practice was "to treat complaints of alleged civil rights abuses by staff as 'not grievable'"), *remanded on other grounds*, 304 F.3d 75 (1st Cir. 2002). A remedy may be unavailable for a particular complaint by unsupported administrative fiat. *Williams v. Strout*, 2018 WL 4334877, *2-3 (S.D.Ind., Sept. 11, 2018) (holding the remedy unavailable where plaintiff's grievance was rejected because "a tort claim is not a grievable issue," which is not supported by the grievance policy); *Mooney v. Beard*, 2014 WL 2747536, *1 n.1 (E.D.Cal., June 17, 2014) (holding prisoner whose grievance was cancelled because it was "outside the scope of the Inmate Appeals process" was not required to exhaust); *Jackson v. Phelps*, 2013 WL 6092168, *4 (D.Del., Nov. 19, 2013) (holding plaintiff had exhausted because he filed a grievance but it was returned as non-grievable), *aff'd*, 575 Fed.Appx. 79 (3d Cir. 2014) (unpublished).

17.    A remedy need not provide the relief the prisoner prefers (*e.g.*, damages) to be available; it is presumptively available unless it "lacks authority to provide *any* relief or to take *any* action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736 (2001) (emphasis supplied).

Available remedies must be "capable of use" to obtain "some relief for the action complained of." *Ross v. Blake*, 136 S.Ct. at 1858-59 (citations omitted).

18.    Administrative remedies, although "officially on the books," may not be available in practice. *Ross*, 136 S.Ct. at 1859. *Ross* described three examples of such unavailability: *No possibility of relief.* "First . . ., an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . When the facts on the ground demonstrate that no such potential [for relief] exists, the inmate has no obligation to exhaust the remedy." *Ross*, 136 S.Ct. at 1859. *An "opaque" or "unknowable" system.* "[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . [W]hen a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Ross*, 136 S.Ct. at 1859. *"Machination, misrepresentation, or intimidation."* Remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar." *Ross*, 136 S.Ct. at 1860.

19.    If the grievance system is not functioning, in whole or in part, at the time the prisoner seeks to exhaust, the remedy may be unavailable. *Smith v. Lagana*, 574 Fed.Appx. 130, 132-33 (3d Cir. 2014) (per curiam) (unpublished) (holding allegations of a "culture of not processing, nor responding to . . . complaints against correctional guards" combined with evidence of the plaintiff's fruitless attempts to exhaust raised a factual question of unavailability barring summary judgment); *Maxwell v. Wilcher*, 2019 WL 1053629, *1 (S.D.Ga., Mar. 5, 2019) (holding allegation that the "grievance slot on the facilities [sic] kiosk machine has been full and unable to accept any grievance . . . since 2016"

sufficiently alleged that the remedy was unavailable), *report and recommendation adopted in part, rejected in part on other grounds,* 2019 WL 1338414 (S.D.Ga., Mar. 25, 2019); *Meador v. Hammer*, 2013 WL 753486, *5-6 (E.D.Cal., Feb. 27, 2013) (finding prison internal mail system "was effectively broken at the time he was attempting to exhaust his remedies"), *report and recommendation adopted*, 2013 WL 1415012 (E.D.Cal., Apr. 8, 2013); *Bowers v. City of Philadelphia*, 2007 WL 219651, *16 (E.D.Pa., Jan. 25, 2007) (finding no meaningful access to grievance procedure in police custody and jail intake areas where prisoners had no writing implements or paper and their oral complaints were ignored or dismissed). This phrase from *Ross* indicates plainly that if the system never does anything for prisoners, it need not be exhausted, *Ross*, 136 S.Ct. at 1859, a proposition most courts can be expected to resist and one that will be very difficult to prove. A few courts have relied on this proposition that administrative remedies can be deemed unavailable based on their performance. *McArdle v. Ponte*, 2018 WL 5045337, *3 (S.D.N.Y., Oct. 17, 2018) (holding a plaintiff claiming unavailability of remedy, who alleged that he "never received any response to his grievances and that he 'observed hundreds of inmates' grievances in the grievance box . . . for days without being processed by the . . . committee," had pled facts that "plausibly suggest that the lack of any response to his grievance was attributable to a larger problem at the facility"); *V.W. by and through Williams v. Conway*, 236 F.Supp.3d 554, 585 (N.D.N.Y., Feb. 22, 2017) (finding jail "consistently unwilling to provide any relief" where defendants failed to refute allegations of "staff consistently refusing to provide grievance forms, ignoring grievances, and in some cases throwing grievances in the trash"); *Apodaca v. Raemisch*, 2015 WL 13709770, *3 (D.Colo., Sept. 8, 2015) (finding factual issue barring summary judgment where the plaintiff alleged that defendants "prevented him from timely filing his grievances by creating an institution-wide hostile environment of retaliation and of routinely thwarting grievances," and supported his claim with 33 non-hearsay affidavits from other prisoners, "each alleging frustration or fear arising from the grievance process"), *report and recommendation adopted*,

2015 WL 13215657 (D.Colo., Oct. 30, 2015), *rev'd and remanded on other grounds*, 864 F.3d 1071 (10th Cir. 2017), *cert. denied*, 139 S.Ct. 5 (2019).

20.    Sometimes no relief is possible that will benefit the prisoner because the injury is complete and irremediable and the prisoner has been transferred or released and will not benefit from any remedial action. *White v. Bukowski*, 800 F.3d 392, 394-95 (7th Cir. 2015) (so holding where plaintiff gave birth to a child with severe birth defects, attributed to inadequate jail medical care, but had left the jail a few days later).  As the court asked, ". . .[W]hat good would it have done her to file a grievance?"  *Id.*  Courts are reluctant to acknowledge this possibility and some have gone so far as to assert that "even if the jail or prison can do nothing whatever for the complaining prisoner, and even if that's obvious to a prisoner who not unreasonably believes himself to be a victim of deliberate indifference to a medical or other legitimate need—the prisoner must file a grievance if he is to preserve his right to sue." *White*, 800 F.3d at 395 (citing *Napier v. Laurel County*, 636 F.3d 218, 223–24 (6th Cir. 2011)); *see Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (holding prisoners should be required to file grievances that can't benefit them because they "might result in improvements to prison administration.").

21.    Sometimes grievance systems as a whole are unintelligible, even to prison officials. *Moore v. Lamas*, 2017 WL 4180378, *10-11 (M.D.Pa., Sept. 2, 2017) (noting official witness was "not able to provide answers to key questions and he could not clarify the interaction between" two separate remedies, "did not elucidate certain areas of confusion," and gave testimony that was "at best, difficult to decipher" on a fundamental point that was not clarified in written policy either); *Springer v. Unknown Rekoff*, 2017 WL 2105433, *4 (S.D.Tex., May 12, 2017) (noting appeal procedure was described in a manual prisoners did not have access to, but was not described in the handbook provided to them; rejecting unsupported claim that nonetheless there was an "appeal procedure" that was "known to inmates in the jail and frequently used" and that inmates' responses to grievances were

"liberally treated" as appeals); *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1116 (M.D.Ala. 2016) (describing prisons' mental-health grievance system as "so full of blind alleys and dead ends that even those who run it cannot manage to accurately and consistently describe how it works"); *Adams v. Haford*, 2013 WL 951230, *9 (W.D.La., Feb. 13, 2013) (noting jail administrators could not agree as to what the third step of their grievance system was, leading the court to hold the plaintiff only to the first two steps), *report and recommendation adopted*, 2013 WL 951216 (W.D.La., Mar. 12, 2013).

22.     Particular rules or procedures may also be opaque as they are presented to prisoners. *Szabo v. Mid-Hudson Forensic Psychiatric Ctr.*, 2018 WL 708366, *3-4 (S.D.N.Y., Feb. 1, 2018) (finding grievance instructions at forensic hospital "too opaque for use"; the relevant section did not mention grievances but was headed "Concerns," which may not give sufficient notice that it comprised the grievance procedure; also, "three of the five steps outlined contain language suggesting that the step is optional, not required"); *Baker v. McCorkle*, 2017 WL 971371, *6 (S.D.Ind., Mar. 14, 2017) (holding appeal procedure "so unclear" the plaintiff was not obliged to complete it, noting *inter alia* that the inmate handbook instructed prisoners that "[a]ppeal of a grievance officer's/board's decision is made to the Administration" without explaining "which form to use, what information to include, and who is considered "Administration" to which an appeal should be directed," and ("[m]ost tellingly"), that the Sheriff testified his office had never received an appeal); *Thornton v. Cty. of Albany*, 2016 WL 5793714, *6 (N.D.N.Y., Oct. 4, 2016) (noting unclarity of handbook provisions which required "the inmate to first exhaust the informal process, and if an acceptable resolution is not reached, to then file a grievance within five days of receiving a "formal step" (i.e. receiving a grievance form), but also required the prisoner to "file a grievance" within five days of the act giving rise to it, while providing no time frames for starting the informal process, how long the prisoner should wait for informal resolution before requesting a grievance form, how long to wait to receive a grievance form from a supervisor, or what he or she should do if a grievance form is never received") "Opacity"

may arise from officials' claims about the meaning of rules that on their face don't seem hard to understand. *Collins v. Neal*, 2018 WL 5019520, *2 (N.D.Ind., Oct. 15, 2018) (where plaintiff was placed in general population and violently assaulted, but the grievance policy made classification matters non-grievable, rejecting officials' claim that plaintiff must have exhausted a claim of failure to protect even though the assault resulted from a classification decision; stating if that interpretation is right, the rule is opaque); *Frye v. Wilt*, 2017 WL 6405623, *6 (M.D.Pa., Dec. 15, 2017) (where rules directed complaints "regarding" sexual abuse to a remedy other than the regular grievance procedure, but prison officials asserted that plaintiff's claim of failure to protect him from being raped by another prisoner must have been grieved, holding the rule opaque; noting "[a]s a matter of fact it is difficult to see how a potential rape claim could not be seen as an issue 'regarding' sexual abuse"). Opacity may also arise where a rule's practical operation departs drastically from what its language implies. *Brandon v. Royce*, 2017 WL 2656452, *4 (S.D.N.Y., June 20, 2017) (where a prisoner stated that he filed his grievance on day 18 of a 21-day time period, but the prison grievance office said it wasn't received for 13 days and was thus untimely, stating: "This delay cut by more than half the 21 days plaintiff had to submit a grievance. A system that requires an inmate to know to submit a grievance nearly two weeks before the deadline is 'opaque' and, 'practically speaking, incapable of use.' ").

23.     A remedy may be opaque and unavailable where the grievance rules give no instruction on the particular situation facing a prisoner. *Williams v. Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (holding policy opaque where prisoners were instructed to appeal after transfer by filling out a form that is part of the grievance decision, but did not tell them how to proceed if (like the plaintiff) they did not receive a decision); *Perez v. Arnone*, 2018 WL 3596747, *7-8 (D.Conn., July 26, 2018) (holding remedy opaque insofar as it did not explain which of two different appeal forms should be used to appeal a decision concerning an Americans with Disabilities Act issue; noting one official's conclusion plaintiff had exhausted, stating that fact shows "that the process is so confusing that even DOC's own

ADA Coordinator could not understand and navigate the process"); *Lafferty v. Williams*, 2017 WL 8217698, *8 (D.Nev., Dec. 6, 2017) (holding rules which failed to instruct prisoner how to exhaust after transfer or after referral to the Inspector General, along with contradictory grievance response, made the remedy unavailable), *report and recommendation adopted*, 2018 WL 1245500 (D.Nev., Mar. 9, 2018).  That holding makes sense not only under *Ross*, but also under its earlier holding that the terms of the prison's grievance policy are the measure of prisoners' exhaustion obligations. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020) ("Although a prisoner must take all the steps the prison offers, . . . and do so properly, . . . this does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities.").

24.      Remedies must be "knowable" to be available. *Goebert v. Lee County*, 510 F.3d 1312, 1322–23 (11th Cir. 2007) (cited in *Ross v. Blake*, 136 S.Ct. at 1859; holding appeal procedure not disclosed to prisoners was not an available remedy). Prison officials are obliged to take "reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 537-38 (7th Cir. 2018); *accord*, *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013) ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes.").  This obligation is generally held satisfied by providing the prisoners with the grievance policy, describing it accurately in a handbook that is given to the prisoners, or comparable measures. *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (stating "courts may not deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures"; holding that standard satisfied where "the jail's grievance procedures are published in an inmate handbook, which is in the record, and explained on jail television, and Davis does not contend that any circumstances precluded him from accessing either source"); *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (holding that prisoners who admitted

receiving guide that explained the grievance procedure were not excused from using it by their allegations that prison personnel had "made it clear" that they should instead voice complaints informally to medical personnel).

25.     Failure to reasonably inform prisoners, or a particular prisoner, about the grievance procedure may render it unavailable. *Hernandez v. Dart*, 814 F.3d 836, 842-43 (7th Cir. 2016) (holding remedy was not available to a prisoner who was first hospitalized, then brought to jail, then on the same day hospitalized in a different facility, and not provided the jail handbook or otherwise informed of the grievance process during the 15 days allowed for filing a grievance); *Albino v. Baca*, 747 F.3d 1162, 1175-76 (9th Cir. 2014) (en banc) (granting summary judgment to plaintiff who declared without contradiction that he was never given any orientation; had never seen the jail's personnel manual, a complaint box, or a complaint form; and that when he repeatedly sought and was denied help from prison staff he was not provided complaint forms or told how to file a grievance, but was just referred to his criminal defense attorney; manual detailing procedures was not provided to prisoners); *Dailey v. Francum*, 2015 WL 3884484, *5 (S.D.Ind., June 24, 2015) (holding where the plaintiff did not receive an orientation on admission and the written policy was apparently not actually available, the fact that staff members were available to answer questions was not sufficient).

26.     Where the usual methods of publicizing a grievance procedure are ineffective for particular prisoners or types of prisoners, more may be required of officials. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018) (holding that describing the system in a language that a prisoner cannot understand is "not enough to render those remedies 'available' to the prisoner"); *Bailey v. Wienandt*, 2018 WL 5619197, *3 (W.D.Wis., Oct. 30, 2018) (declining to find non-exhaustion in a case involving a juvenile prisoner absent evidence that "the relevant administrative procedures were explained in terms intelligible to lay persons, particularly taking into consideration plaintiff's age (14 years old)."). Where a grievance policy is made known, courts hold officials to its contents, and "will not condition

exhaustion on unwritten or 'implied' requirements." *Jackson v. Ivens*, 244 Fed.Appx. 508, 514 (3d Cir. 2007) (per curiam) (unpublished) (citing *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004)); *accord*, *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (noting that under the grievance policy, an error in time or date of the events at issue did not justify declining to decide a grievance; "Because the prison refused to process Hill's grievance based on his deviation from an unannounced rule, no further administrative remedies were available to Hill."); *Williams v. Wilkinson*, 659 Fed.Appx. 512, 520-21 (10th Cir. 2016) (unpublished) (declining to credit claim that under "facility practice" the prisoner must have obtained a receipt for his Request to Staff; "the prison's regulations, not 'facility practice,' define proper exhaustion (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

27.     Since *Ross v. Blake*, courts have increasingly focused on the materials prison officials provide prisoners about administrative remedies, and have held prisoners entitled to rely on them, rather than expecting them to ferret out more detailed requirements that may appear in other sources. *Lanaghan v. Koch*, 902 F.3d 683, 689-90 (7th Cir. 2018) (declining to hold a prisoner who was physically unable to submit a timely grievance to a procedure for late grievances in the Administrative Code but not in the handbook provided to prisoners); *Leos v. Rasey*, 2016 WL 4041180, *4 (E.D.Cal., July 27, 2016) (where grievance form said only "Explain your issue," providing 21 short lines, declining to hold plaintiff to a state regulation calling for "all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form," absent evidence that that regulation had been publicized to prisoners), *report and recommendation adopted*, 2016 WL 4943973 (E.D.Cal., Sept. 16, 2016), *reconsideration denied*, 2017 WL 569534 (E.D.Cal., Feb. 13, 2017).

28.     Grievance responses that cannot be understood, or do not lend themselves to appeal or other further action under the grievance policy, can render the remedy unavailable. *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (holding remedy unavailable where a prisoner's grievance was returned unprocessed, with only the notation that a staff member "had viewed the video and is not able to verify

this occurred," an action not authorized by the grievance policy, for which neither the policy nor any instruction from grievance personnel provided any way forward); *Gittinger v. Ramos*, 2009 WL 10703863, *13 (W.D.Tex., Jan. 30, 2009) (holding failure to appeal did not constitute non-exhaustion where responses stated first that the matter was "under investigation" and later that "[t]he work is in process"), *report and recommendation adopted*, 2009 WL 10703964 (W.D.Tex., Apr. 13, 2009); *Warren v. Purcell*, 2004 WL 1970642, *6 (S.D.N.Y. Sept. 3, 2004) (holding defendants estopped to claim non-exhaustion where a "baffling" response purported to reject a grievance, stating it was returned for the grievant to "correct the noted problems" and resubmit, but "[i]ncredibly, by way of explanation, the letter state[d], 'Your grievance is medical and needs to be investigated. It will take a minute before a response").

29.    The Supreme Court held remedies to be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." In *Woodford*, we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[ ] up all but the most skillful prisoners." . . . And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures." *Ross v. Blake*, 136 S.Ct. at 1860 (citation and footnote omitted).

30.    "Machination" sounds sinister but should not be viewed as requiring affirmative misconduct; there is no such requirement in § 1997e(a). *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) ("The term 'available' is given its ordinary meaning, and it does not include any requirement of culpability on the part of the defendant.").  It is probably best understood as including the "blind alleys and quagmires" the Court referred to, as well as actions that obstruct exhaustion in particular instances.

31.    Prison rules and procedures can create "blind alleys and quagmires," and do so in a wide variety of circumstances, *e.g.*: Denial of postage or envelopes to indigents to send grievances or

appeals. *Williams v. Pollard*, 2009 WL 3055334, *10 (E.D.Wis., Sept. 21, 2009) (holding remedies were unavailable to a prisoner who could not obtain envelope for an appeal that had to be mailed); *Bey v. Caruso*, 2007 WL 2875196, *1 (E.D.Mich., Sept. 28, 2007) (noting that denial of "postal loan" was based on plaintiff's using his religious name suffix on the relevant form, contrary to the policy he was trying to challenge; "the procedural question of exhaustion is inextricably intertwined with the merits of this case"). Absence of copying facilities or denial of their use where grievance rules require copies of documents. *Almy v. Davis*, 726 Fed.Appx. 553, 557 (9th Cir. 2018) (unpublished) (vacating dismissal for non-exhaustion where grievance was rejected because plaintiff failed to attach a copy of the challenged disciplinary decision because he did not have the funds to pay for it, and prison officials already had the charges anyway); *Iseley v. Beard*, 2009 WL 1675731, *6 (M.D.Pa., June 15, 2009) (holding remedy unavailable where copies of documents were required to appeal but there was no copier access in Restricted Housing Unit; grievance authorities said this is "not our problem"). Denial of writing materials in some forms of confinement. *West v. Emig*, 787 Fed.Appx. 812, 815-16 (3d Cir. 2019) (unpublished) (holding plaintiff's assertion that he was denied a pen in "Psychological Close Observation" barred summary judgment for non-exhaustion); *Pierce v. Cook County*, 2014 WL 4376231, *3-5 (N.D.Ill., Sept. 4, 2014) (denying summary judgment for non-exhaustion where the plaintiff averred that he had no access to writing materials while in the hospital during the period for filing a timely grievance); *Campbell v. Cowen*, 2012 WL 1636996, *4-5 (N.D.Ind., May 9, 2012) (holding allegation that plaintiff was deprived of writing materials and kept under conditions of total darkness raised a factual issue barring summary judgment on non-exhaustion).

32.    Some prison rules are explicitly designed to limit prisoners' use of the grievance process. The obviously correct holding is that if such a rule prevents a prisoner from exhausting, the remedy is unavailable. *Riddick v. Semple*, 731 Fed.Appx. 11, 13 (2d Cir. 2018) (unpublished) (holding § 1997e(a) "would not preclude [plaintiff] from asserting § 1983 claims in federal court that were barred

by grievance restrictions"); *Walker v. Mich. Dep't of Corr.*, 128 Fed.Appx. 441, 446 (6th Cir. 2005) (per curiam) (unpublished) (holding a rule requiring certain prisoners to obtain permission to file a grievance makes the remedy unavailable where permission is denied); *Peck v. Nevada*, 2018 WL 3312977, *6 (D.Nev., July 5, 2018) (holding prisoner stated a "colorable claim of denial of access to the courts" where his allegations showed "he is unable to grieve all the issues he wishes to pursue in civil rights and habeas litigation due to the restrictions in AR 740 to one grievance per week and one issue per grievance"), *reconsideration dismissed*, 2018 WL 3845153 (D.Nev., Aug. 13, 2018).

33.    Substantive rules that make it impossible for a prisoner to pursue particular claims or types of claims may make the remedy unavailable.  This can be the case with rules barring grievances raising more than one issue.  *Moore v. Bennette*, 517 F.3d 717, 722, 730 (4th Cir. 2008) (holding plaintiff had properly exhausted despite application of a "no multiple issues" rule to prevent him from pursuing his grievance about repeated instances of punishment without notice or charge); *see also Lafountain v. Martin*, 334 Fed.Appx. 738, 741 & n.2 (6th Cir. 2009) (per curiam) (unpublished) (holding the grievance body was wrong to characterize a claim of multiple retaliatory incidents as involving multiple issues). Another example is rules barring grievances about things that haven't happened yet, for which the prisoner might be entitled to injunctive relief.  Some courts have rejected arguments that plaintiffs may not pursue pre-enforcement challenges if the grievance system will not entertain them. *Meisberger v. Donahue*, 245 F.R.D. 627, 629 (S.D. Ind. 2007) (declining to find non-exhaustion where officials refused to consider a pre-enforcement challenge; "it is clear that both men presented their grievances about the policy to DOC officials and that the DOC had the opportunity to review those complaints and respond"); *Aiello v. Litscher*, 104 F.Supp.2d 1068, 1074 (W.D.Wis.2000) (rejecting argument that plaintiffs failed to satisfy exhaustion requirement where they filed their administrative complaints before the challenged regulation was implemented).  *Compare, e.g.*, *Fratis v. Owens*, 168 Fed.Appx. 865, 867 (10th Cir. 2006) (unpublished) (finding non-exhaustion where grievance system

rejected a prospective transfer of women prisoners to a higher-security institution unde a rule restricting grievances to matters that had affected the prisoners personally.

34.     A wide variety of acts or omissions by prison staff with respect to particular grievances may make the remedy unavailable, *e.g.*: Failure to process grievances consistently with policy. *Mills v. Mitchell*, 792 Fed.Appx.  511, 512 (9th Cir. 2020) (unpublished) ("CDCR's repeated failure to meet the statutorily required deadlines and failure to provide proper notice made remedies effectively unavailable"); *Carr v. Higgins*, 700 Fed.Appx. 598, 600–01 (9th Cir. 2017) (unpublished) (holding defendants not entitled to summary judgment for non-exhaustion where plaintiff "timely submitted a 'concern form' . . . but IDOC officials did not respond, and subsequently refused to collect his grievance forms"); *Michel v. Fed. Bureau of Prisons FCI*, 2018 WL 835101, *4-5 (N.D.Ala., Feb. 13, 2018) (noting apparent random assignment of plaintiff's grievances to initial and appellate levels, causing erroneous rejections for procedural defects). Another example involves persistently misconstruing grievances so they cannot be exhausted. *Coleman v. Dart*, 2019 WL 670248, at *7-8 (N.D.Ill., Feb. 19, 2019) (noting grievance was treated as a "request for services" that could not be exhausted); *Thompson v. Clarke*, 2018 WL 1955424, *12-13 (W.D.Va., Apr. 25, 2018) (similar to *Coleman*); *Lewis v. Garcia*, 2016 WL 6603997, *8-10 (C.D.Cal., Sept. 26, 2016) (noting prisoner's grievance about conduct of a disciplinary proceeding was repeatedly rejected with instructions to pursue a disciplinary appeal, even though he had already prevailed on appeal and was now grieving misconduct during the proceedings), *report and recommendation adopted*, 2016 WL 6602554 (C.D.Cal., Nov. 7, 2016). Another example involves demanding that prisoners produce documents that they cannot produce. *DeBrew v. Atwood*, 792 F.3d 118, 126-29 (D.C.Cir. 2015) (noting repeated rejection of prisoner's appeal for failure to attach a prior decision despite prisoner's showing he did not have it and could not get it). Another example involves Kafka or *Catch-22*-esque procedural impasses. *Jamison v. Varano*, 2015 WL 4662696, *4 (M.D.Pa., Aug. 6, 2015) (holding the remedy

unavailable where prison officials provided illegible photocopies of required documents and the plaintiff's grievance was then dismissed because of the documents' illegibility); *Lee v. Sorrels*, 2013 WL 6163938, *9 (W.D.Okla., Nov. 25, 2013) (noting grievance official's direction to resubmit complaint about deprivation of wheelchair to the medical office and medical officer's direction that it should be treated as a property grievance). Another example involves failure or refusal to provide necessary forms, in those systems which require their use. *Almy v. Davis*, 726 Fed.Appx. 553, 556-57 (9th Cir. 2018) (unpublished) (vacating summary judgment for non-exhaustion where plaintiff declared under penalty of perjury that defendants provided too few grievance forms to exhaust all of his claims); *Stine v. U.S. Federal Bureau of Prisons*, 508 Fed.Appx. 727, 729-30 (10th Cir. 2013) (unpublished) (holding prisoner affidavits confirming plaintiff's claim he had been denied forms raised a material factual issue barring summary judgment).

35.    Prisoners are generally entitled to rely on what officials tell them about using the grievance process, and the remedy may be unavailable if they are misled in consequential ways. *Ross v. Blake*, 136 S.Ct. at 1860 n.3 ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process," and "if prison officials misled [a prisoner] into thinking that . . . he had done all he needed to initiate the grievance process," then "[a]n administrative remedy is not 'available.' " (citations omitted)); *Hardy v. Shaikh*, 959 F.3d 578, 587-88 (3d Cir. 2020) (holding misleading or deceptive instructions from officials can make the remedy unavailable; "clear misrepresentation" is not needed; prisoners must show that they were actually misled); *Townsend v. Murphy*, 898 F.3d 780, 783-84 (8th Cir. 2018) (reversing summary judgment for non-exhaustion where the plaintiff declared that his formal grievance was late because a sergeant wrongly advised him not to file it until he had received a response to his informal grievance—misinformation whose effect was "magnified" by lack of access to the library, which held the only available copy of the grievance directive); *Davis v.*

*Hernandez*, 798 F.3d 290, 295-96 (5th Cir. 2015) ("Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."; plaintiff reported that he had asked multiple staff members and was told he could not appeal his grievance); *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (holding "a prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available").

36.     Statements by officials that are merely ambiguous and not directly misleading with respect to the grievance system may not be held to make the remedy unavailable. *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (holding that warden's statement that a decision about religious matters rested in the hands of "Jewish experts" did not excuse non-exhaustion, but was at most a prediction that the plaintiff would lose; courts will not consider inmates' subjective beliefs in determining whether procedures are "available"); *Jackson v. District of Columbia*, 254 F.3d 262, 269-70 (D.C.Cir. 2001) (holding that a plaintiff who complained to three prison officials and was told by the warden to "file it in the court" had not exhausted); *Yousef v. Reno*, 254 F.3d 1214, 1221-22  (10th Cir. 2001) (holding that plaintiff who was confused by prison officials' erroneous representations that the grievance system could not address "legality and fairness" of restrictive Special Administrative Measures failed to exhaust, since in fact it could address their fairness if not their legality)

37.     Remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through . . . intimidation," and appellate courts have recognized that "such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross v. Blake*, 136 S.Ct. at 1860 (citations omitted). Most circuits agree that threats or assaults directed at preventing prisoners from complaining may make nominally available remedies unavailable in fact if "'a similarly situated individual of ordinary firmness' [would] have deemed [the remedy] available," which is the standard applied in First Amendment retaliation cases. *Hemphill v. New York*, 380 F.3d

680, 688 (2d Cir. 2004); *accord*, *Rinaldi v. United States*, 904 F.3d 257, 269 (3d Cir. 2018); *McBride v. Lopez*, 807 F.3d 982, 987-88 (9th Cir. 2015); *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014), *aff'd and remanded on other grounds* sub nom. *Simmons v. Himmelreich*, 136 S.Ct. 1843 (2016); *Tuckel v. Grover*, 660 F.3d 1249, 1252-54 (10th Cir. 2011); *Verbanik v. Harlow*, 441 Fed.Appx. 931, 933 (3d Cir. 2011) (per curiam) (unpublished); *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006).

38.    Some circuits additionally hold that the prisoner must further show that the threat or intimidation actually did deter the plaintiff from pursuing administrative remedies. *Rinaldi v. United States*, 904 F.3d at 268-69); *McBride v. Lopez*, 807 F.3d at 987-88; *Turner v. Burnside*, 541 F.3d at 1085. Threats of retaliation need not be graphically explicit in order to support a claim of unavailability of the remedy. *Kincaid v. Sangamon County*, 435 Fed.Appx. 533, 536-37 (7th Cir. 2011) (unpublished) (holding "[a] threat from the superintendent that [plaintiff] and his family needed to 'shut the fuck up' may have intimidated [plaintiff] and rendered the grievance process unavailable to him"). Threats need not be of physical violence to make the remedy unavailable. *Handy v. Varner*, 2013 WL 1567601, *1, 6 (W.D.Pa., Apr. 12, 2013) (finding threat to issue disciplinary charges and a negative recommendation to prevent plaintiff's release on parole if he didn't stop seeking a transfer deterred plaintiff from grieving and would have deterred a person of ordinary firmness); *Ward v. Rabideau*, 732 F.Supp.2d 162, 165, 171-72 (W.D.N.Y. 2010) (holding plaintiffs' fears of retaliatory conduct such as "unnecessary and harassing frisk searches, urine testing, misbehavior tickets and reports," some of which they alleged had already occurred, raised a factual issue barring summary judgment for non-exhaustion). Since the "ordinary firmness" standard is taken from First Amendment retaliation law, actions that satisfy the "adverse action" requirement of such substantive retaliation claims should also make the remedy unavailable for exhaustion purposes. *See, e.g.*, *Spencer v. Jackson County Missouri*, 738 F.3d 907, 912-13 (8th Cir. 2013) (holding transfer of an older prisoner to a unit

with younger and more violent prisoners could be adverse action, as could denial of grievance forms); *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013) (holding that housing plaintiff with a prisoner with mental illness who threatened violence was a sufficiently adverse action); *Smith v. Levine*, 510 Fed.Appx. 17, 21 (2d Cir. 2013) (unpublished) (holding retaliatory transfer to a restrictive unit could violate the First Amendment); *King v. Zamiara*, 680 F.3d 686, 693, 709 (6th Cir. 2012) (directing entry of judgment against officials who increased prisoner's security classification based on his pursuit and instigation of complaints and grievances); *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (holding that a transfer to a similar prison met the adverse action requirement where the prisoner lost the high-paying job he needed to pay his attorney and the transfer made it more difficult for the attorney to visit him); *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (holding denial of high fiber diet, having to wait for a medical appointment, and having to deal with defendants' obstruction of grievances might meet the standard, but "[i]nsulting or disrespectful comments" ordinarily do not).

39.    A prisoner's making other kinds of complaints about the same subject matter does not show that the prisoner was not intimidated from pursuing a grievance. *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (holding threats or intimidation "may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts"); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) (following *Hemphill*, holding plaintiff's filing of a Federal Tort Claims Act claim did not show that the grievance remedy was available).

40.    A prisoner's filing of grievances about other subjects does not show that the prisoner was not intimidated from filing a grievance about the subject of the instant case. *Rinaldi v. United States*, 904 F.3d 257, 270 (3d Cir. 2018) (holding *Kaba v. Stepp* observation, below, "holds true in this case, where [the plaintiff's] willingness to file grievances concerning unrelated and far less inflammatory subjects like cleaning supplies is hardly dispositive of whether he was subjectively deterred from

pursuing his Retaliation Request at the Institution"); *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014) (stating "[c]omplaints and grievances related to petty requests and those related to prison-official misconduct are wholly different, particularly when there are specific allegations in the record" of retaliatory staff conduct), *aff'd and remanded on other grounds* sub nom. *Simmons v. Himmelreich*, 136 S.Ct. 1843 (2016); *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006) (holding other grievances did not show that the remedy was available for grievances against the staff who were threatening the plaintiff; "The ability to take advantage of administrative grievances is not an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.").

   **WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests this Honorable Court to deny Defendants' Motion, and award any and all other relief as this Court deems just. And if the Plaintiff has prayed for wrong, improper or insufficient relief, then it prays for such other and further relief as to which it may be entitled in the premises or such relief as the Court may deem necessary under the circumstances.

   Respectfully submitted, this the 13th day of July, 2023.

**SHCOREY ROSS**

**Of Counsel:**

__ /s/ Thomas J. Bellinder, Esq. _____
Thomas J. Bellinder (MSB # 103115)
**BELLINDER LAW FIRM**
200 E. Government St.
Brandon, MS 39042
Phone: (601) 487-9340
Fax: (601) 265-1795
Email: Thomas@BellinderLawFirm.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that a true and correct copy of the foregoing document has been filed with the court clerk via the ECF system and a copy forwarded to all counsel of record via electronic means.

This the 13th day of July, 2023.

BY: __ /s/ Thomas J. Bellinder, Esq. _____